Good morning. May it please the court, my name is Julie Johnson and I'm here today on the District Court's Imposition Term of Supervised Release. As this court knows, Section 5D.1.1c of the guidelines makes clear both in its language, its structure, and its purpose that courts should no longer ordinarily impose a term of supervised release on a deportable alien. And the application note 5, which is authoritative guidance for sentencing courts, makes clear that in a typical case, the threat of future prosecution should a person again illegally re-enter will provide sufficient deterrence and the need to protect the public. And the court should only consider imposing a term of supervised release if it makes findings that in that particular case there is a need for an added measure of deterrence and the need to protect the public. And the District Court failed to do that here. The clear goal of this guideline, the Sentencing Commission studied. I had a little trouble with that last statement. You said the court didn't. I thought the court focused head on on the reason for the supervised release and gave exactly the reason why I thought it was necessary in this case. It had three illegal entries. And you said I explained why the supervised release would create a greater deterrence and a more efficient ability to bring defendant to justice if he came back a fourth time. And it seems to me that's exactly the exception that all the courts have recognized for application of supervised release in this type of case. Well, there are a few problems, Your Honor. Number one, the court did nowhere made a reference to 5D1.1c or acknowledged the need to make individual findings. At most there was an oblique reference to sometimes probation has a problem. Did it reference the pre-sentence report? The court did make a reference to probation sometimes having a problem with the imposition of supervised release. The pre-sentence reports here specifically referred to 5D1.1c. Yes, it did. It specifically did and specifically recommended to the court that in consideration of the safety of the community, two years of supervised release is recommended. Pointed out that he had two prior convictions for assault. So the pre-sentence report did exactly what you of the guidelines and recommended to the court that he do what he did. The recommendations of the probation officer are not a replacement for the district court making the required findings. And I think important It's a predicate here. I mean, if the pre-sentence report's that, it's a pre-sentence report. Yes, Your Honor. Well, it is a substitute if there's no objection to it and the court adopts the pre-sentence report and there was no objection on this aspect. Your Honor, there wasn't a specific objection. Number one, the pre-sentence report acknowledged the language of the guideline, including the general recommendation. You wrote a letter to the judge and said, I know I can get supervised release. Wrote a letter and signed it. Yes, Your Honor. I believe that's it. Did you write the letter? I did not, Your Honor. I did not represent Mr. McConnell on the trial. Right? You're the heir. Your predecessor wrote a letter, not to the U.S. Attorney, but to the judge, right? Yes, Your Honor. It said, I know I can get supervised release. I recognize I'm exposed to supervised release. Specifically said that and signed it. Not to the prosecutor, but to the judge personally. Yes, Your Honor. But awareness that that can be imposed is not an acceptance of that sentence. Straight up. No plea agreement or anything. I know I can get supervised release. Yes, Your Honor. But I think what's important to remember is in this case... Did you come up here on field and say, the judge couldn't give me supervised release? Your Honor... Didn't explain it well enough. At the sentencing, Mr. Applicano's attorney asked for a sentence of 8 months to 10 months. And the initial letter was 8 months. At sentencing, it said somewhere between 10 months. The requested sentence would not have carried with it a term of supervised release. So the sentence that was requested... You told the judge. He told the judge. The lawyer told the judge. The defendant told the judge, I know I can get supervised release. He knew what the PSR recommended. Supervised release. And cited the guidelines section that you refer to and then no objection. And the judge gives supervised release and explains why. I don't know if Your Honor is getting to the preservation issue or to the issue about his knowledge about the nature of the supervised release. But responding to the first question about preservation, I think under Lynn, Mr. Applicano clearly preserved his objection to the imposition of supervised release by requesting a sentence of less than a year that by statute and by guideline application would not have carried with it a term of supervised release. I went back and looked at roughly 10 unpublished decisions of this court involving application of 5D1.1c. And in every single one of those, all but two involved about plain error review. And all but two of them... I'm sorry. And in every single one of those plain error cases, the defendant had asked for a sentence of at least 12 months. And they had also conceded plain error in their opening briefs. We have a different issue here. Mr. Applicano did preserve his objection and he did seek a sentence that did not include a term of supervised release. Now, moving on to whether the district court complied with 5D1.1c, I know there are other courts that have issued published decisions on this, including the Fifth Circuit, and they have focused on the fact that this language is hortatory. And I think it's really important to remember that what we're asking district courts to do, the guidance that this court offered, provided in Bautista, and the guidance that the Fifth Circuit and the Seventh Circuit and the Ninth Circuit, they've all read this guideline consistently. You need to make determination on the record, judge, if you think there's a need for added deterrence and a protection for the public. And this is not a heavy burden, but if we look to how similar hortatory language has been applied in other parts of the guideline, we see it throughout. And it's not treated as if, well, that can just be made obliquely or by indirect reference. Some examples specifically, if you look at the abusive trust enhancement in the guidelines, ordinarily it shouldn't be applied to a bank teller, for example. But yet district courts, if they are going to deviate from that guideline, they still have to put findings on the record. And this court has reversed sentences when the courts have not made those required findings. I guess it sounds to me, I know there are other cases out there where the findings are extremely oblique. They're not even tied to supervisory leaks. You just sort of search the transcript for anything a judge might have said at any point that might be a justification for supervised release. But this doesn't seem oblique to me at all. I mean, he really says, here is the reason why I'm going to give you supervised release, colon. And then there's the reason. And so really your only objection is that where he said, even though I know probation has concerns, if you took that out and put in brackets 5D1.1C, it would be a different case from your perspective. Is that what we're talking about? No, Your Honor, not at all. If we focus on that one sentence that the court did make with respect to the imposition, it said, I'm opposing this three-year term because I believe you may well come back. And at its best, yes. But he has two paragraphs. That's the summary of two pages of discussion about I think you're going to do this again, you've been repetitive, this type of thing. Two pages, the court lists the problems and then gets to that summary. This is the reason, which is an allusion to everything he laid out. I don't think he could say anything more. Your Honor, there's a few things I want to say in response to that. Number one, the preceding two pages, yes, there are references to concern about Mr. Applicano's criminal record and to his history of three prior entries. But that discussion is clearly in the context of imposing the term of incarceration. Indeed, in one of the places, this is on joint appendix, page 53, the court, when he's beginning to discuss, he says, I need to promote respect for the law and with you. That, of course, is an appropriate factor for a term of incarceration but not for a term of supervised release. It says, I have to promote respect for the law with you and with you. I have no reason to believe you won't do this again. You've done it twice already. There's just no reason to believe you. So that's what gives me some pause about how bad things are at home. You'll find a reason to get back here again. So I'm going to fashion a sentence that if you do, it will be easy to incarcerate you for a very long time. I want you to understand that. Yes, Your Honor. And then he goes on to explain more of the same, two more pages, and then he gets to the summary, actually two more pages, and then he gets to the summary and says, this is what I'm going to do, why I'm giving you a supervised release, which is an illusion talk, that whole discussion. I don't know what you want the court to say more. What words would you put in the court's mouth here that you would want us to require? Your Honor, we're not looking for specific words. The point is the court needs to make findings that the threat of a future prosecution and the top of a guideline sentence are not sufficient to address his apparent concerns of deterrence. Unbelievable. He found that the man's going to come back again. He found he wanted deterrence. He wanted to facilitate incarceration as a deterrence and to protect the public. He said all those things. But, Your Honor, you cannot tell from this record whether that is going to the term of incarceration or whether that is going to the imposition of supervised release. An easy incarceration when you come back only alludes to the supervised release. I'm not sure whether you're being fair in what you're attributing to the district court. It seems to me we have to agree with what the court was saying before we can argue and take your point. But you're sort of taking all the meat out of what the court was saying. Your Honor, I'm not disagreeing that the court expressed general concern with respect to deterrence but not targeted to the term of supervised release. Again, the guideline is very clear and this court's and the sentencing court's requirements. What do you think the court was saying? I want to facilitate his incarceration and he says it two or three times and then he says this is why I'm giving you supervised release to facilitate. Now, what clearer could it be? Your Honor, the guideline makes clear that the district court has to find that this is not an ordinary case in which the threat of future prosecution is sufficient deterrent. It's not an ordinary case. It's the third time the guy's come back? Your Honor, if we look at the other cases in this circuit, the unpublished decisions, we find very unusual circumstances. We find people who have reentered nine times where the courts have, in many of the cases, the court have given above guideline sentences or upward departures for criminal history where they have specifically noted concerns about gang affiliation or previous violations of immigration law like commission of marriage fraud. In every single one of those cases, there has been something out of the ordinary. Here, in every single illegal reentry case, you're going to have at least two prior entries, right? That's just you can't have the charge without having that immigration history and there is going to be some criminal history. The court made no findings saying your criminal history is especially troubling. There was no upward departure. There was no above guideline sentence. And there was no discussion that those three entries were in any way unusual. This is right in the heartland and this is very different from all of the cases that have previously been before this court where there have been unusual circumstances that have been specifically noted by the district court. Indeed, the district court here, although he did express concerns about deterrence and his record said, you know, this is the same story. This is the same thing I see in every one of these cases. You come back here for the same reasons. The court didn't say anything that this case distinguishes it from any other. And this is not mere formalism. The guideline makes clear that the court has to make findings. It doesn't have to be, you know, lengthy, but the court has to acknowledge, I've read this guideline. I don't think that a term of just 16 months is sufficient. I think I need to impose an additional term of supervised release. I think it's also significant that the court did not impose special conditions of supervised release related to immigration, at least in his oral order. They were in the written order, but, of course, the oral order controls. So we have missing from this case a number of things that we see in other cases before this court. And I don't, you know, this court teaches in Carter that this court should not go searching through the record to try to figure out what the district court was basing its decision on. And we shouldn't guess that, well, because the court discussed deterrence and the record before imposing a sentence, that that necessarily addressed 5D1.1c and the specific guidance there that determinations, findings have to be made on the record. And it has to be enough for this court to conduct meaningful appellate review. And I just want to remind the court of the language in Bautista, which understandably is an unpublished decision, that the district court must perform an individualized assessment of the propriety of imposing a term of supervised release upon the defendant sufficient for us to conduct meaningful appellate review, including explaining its consideration of the advisory guidance provided in 5D1.c in the official commentary. And our position is that the court did not do that here. It did not differentiate this case from the run-of-the-mill illegal reentry case. And for that reason, that its sentence was both procedurally and reasonably. All right, thank you. Mr. Patterson. May it please the Court. Nicholas Patterson for the United States of America. I realize three issues that have been addressed in the briefs, but I'll focus on the procedural issue because that seems to be the issue that defense counsel and the court has the most interest in. I would agree with Judge Niemeyer that the court addressed this issue head-on. I'd first say that we're looking at a plain error standard of review here. This is the first time that any consideration was brought up was at the appellate stage. The argument that because he didn't say anything below about his sentence or about PSR and having the supervised release is an argument is not an argument. He had the opportunity previously both at his rearrangement and his sentencing, he was asked in both instances if he had any questions. He said absolutely nothing the first time. He raised any issue regarding supervised release was in this appeal. So we're looking at a plain error standard. Here there was no error, let alone plain. So you say analysis stops at the first prong? Yes, Your Honor. The analysis should stop at the first prong. If we were to go further, it still holds up because under the standard here or under what Judge Mazzetti did, as Judge Niemeyer said, he addressed the issue head-on. 5D1.1c is hereditary. Also, if one looks at Application Note 5, there are two main aspects. One is deterrence and the other is public safety, as you know. Here Judge Mazzetti very carefully went through the elements in Sections Joint Appendix 51 through 54. He went through very carefully, and as Judge Niemeyer and also Judge Harris mentioned, it was really page 54 where he's summing up why he was imposing the supervised release. He says, and it's hard to say this any more clearly, I am going to put you on three-year supervised release for the following reason, that I think you may well try to get back into the country again. He said right before that, you certainly need to be deterred because it looks to me like you're going to do this again. The court further emphasized that if the defendant returned, you will face substantially longer jail time. So the deterrence aspect of Application 5, it would be very, very difficult to do anything more specific in terms of showing deterrence than saying this. And also I'd like to add in terms of protection of the community, the second aspect of Application Note 5, Judge Mazzetti said on Joint Appendix page 55, it's better that you're there, Honduras, than here. And this follows from page 51, a whole description that he said, quote, while you're here, you committed crimes, assault, hurting other people. The country doesn't stand for it. They don't want people here who do that. This is an exceptional case. Now, he didn't go up in the guidelines, but he went through the elements of what this individual had done. And what this individual had done was, first, when he was here illegally, he went and stabbed repeatedly an individual without provocation. Second, he attacked his Commonwealth law wife who was pregnant, grabbed her hair, threw her head against the wall, and bit her hand. And finally, another time he was here, he took an individual and walked up to her against her permission and rubbed his private parts, excuse my language, against her. So the judge had a record before him of extreme misconduct. And in looking at why he should impose the supervised release, he looked at the exact elements and he said, I'm imposing deterrent, I'm doing this for a deterrent reason, and I'm also doing this to protect the community. Now, he did not use the magic words of 5D1.1C and the application. However, as Judge King correctly pointed out, in the pre-sentence report that was clearly in the pre-sentence report, which on page I believe it was 31 of the joint appendix, he introduced into the hearing, into the sentencing, and he specifically said, does the defense have any problem with this? Does the prosecution have any problem? So this was in the record. 5D1.1 and application 5 had already been introduced into the record. And even if it had not been introduced into the record, under this court's teaching in the United States v. Johnson, the court is not required to robotically tick through every element of the 3553 factors in a checklist fashion. Here he did, as Judge Neumeier suggested in his dissent in Batista, he gave an individualized description. He went beyond what other courts,  both in published other circuits, but also in the unpublished decisions of this court, have not had to do as either an articulated different decision. They would just present the sentence itself, including the supervised release, and have the reasoning for that be one whole. Or if they differentiate it at all, it's usually one sentence, which says we're doing this for this one reason. Here, Judge Macedi went above and beyond what could be asked of him. He specifically articulated the importance of deterrence. He specifically explained the need for protection. So in terms of the second issue that the defendant raised, and I'll go through the last two quickly, unless the court has any other questions. I guess I do just have one question about this issue. And I totally understand what you're saying, and particularly I do see that what Judge Macedi did here is more than a lot of judges do, and those sentences are affirmed. So I absolutely take your point. But I guess the underlying concern here, and what your colleague is getting at, is that the guidelines do say you're not supposed to do this ordinarily. You're really not. And so we need some way of distinguishing the ordinary from the extraordinary case, and sort of trying to define where that line is. And does this case, tell me, the thing that makes this case out of the ordinary? Because it's true, right, that there will always be some, if there were no criminal history, we wouldn't be here. Well, Your Honor, respectfully, I would say that the sentencing guidelines do not say it should not do this. Instead, they say it is not in every occasion that one does this. Ordinarily, ordinarily, right. So not in the ordinary case. But again, this is, as Judge Niemeyer said in his dissent in Batista, this is hortatory. This is not a command not to do this. And I don't think we have to get it. But if we're going to give it any meaning at all, it has to be, right? So you think it should have no meaning? Judges can do this, they can say, this is the ordinary case, but I'd like to do it anyway. I believe that's correct. Also, I would say that if you look at Application Note 5, it uses the word should, and it gives an instance in which it should, and it gives guidance on when this should be imposed. It said it should be imposed when there's a need for deterrence and safety of the community based on the particular circumstances of the case. Now I'm sort of interested, and I don't know that you need to go this far to win your case, but you think that if Judge Massetti had said, I find this case very ordinary, this presents no out-of-the-ordinary circumstances, nevertheless, I'm going to go ahead and impose supervisory release. He should defer to that. I would say that that's not an issue that we have before us, Your Honor. Right. Why would you argue that? I mean, it seems to me a person is ordinarily deportable in just a multitude of crimes, a single commission of a crime, moral turpitude or whatever. We have thousands coming before us. And the district judge in this case seemed to be troubled by the fact the guy was unreliable, his promises were hollow. He had done it three times now, and this was not just a single deportability. This was a repetition that needed deterrence. On top of it, because of his violent conduct, it's better for him to stay out of the country than in the country. I mean, he listed all these types of things, and I think if you try to make the argument invited by Judge Harris, you'll probably undermine the whole purpose of the 5D1 auditory language. I would agree with Booth. Well, then maybe you ought to relax on that. I think I will try to relax on that, and I appreciate your help with that, Your Honor. I would turn just briefly to the second two points that were raised. And in terms of, again, the issue in terms of substantive error, for the same reasons that there is a plain error review for procedural error, there's also a plain review here in terms of substantive error. It was within guidelines range, right? It was presumed to be reasonable. Indeed. That is the whole argument, Your Honor, and this would be on a plain error standard because it hadn't been raised before. Do you still have a motion to dismiss some of this stuff on the basis of an appeal waiver? There was an appeal waiver. However, there was no motion. There was never raised an issue with the sentencing. So in his plea letter that was from November 23rd of 2013, the only aspect of it that he did not, where he was not pleading guilty, he said that he had a plea waiver that he could raise the bill that was before us today. But there was nothing else besides that. And so, again, in terms of substantive error, there's no substantive error. It would be a plain error standard and that under 3553A2B and A2C, again, deterrence and safety of the community are, again, sufficient factors for this to be substantively reasonable. And finally, I would just say that the judge, again, Judge Macedi followed the needs of Federal Rule of Criminal Procedure 11. He specifically, first this would be harmless error review, and he conducted a proper Rule 11 hearing on December 11th, 2013. He asked the defendant if he had, he first told him what the different penalties were. He said that including three years supervised release was the maximum. He then had the letter that I believe you discussed earlier, Judge King, in which it specifically discusses what the elements are of having pretrial release, what that burden would be if one has pretrial release. And he specifically said, do you understand this letter, which the defendant had actually signed, and a Spanish language interpreter had also read to him. Can I just ask a question about the letter, because it's just something I'm not really clear on. So can everything be put in the letter? Can you put the whole Rule 11 colloquy in the letter, or is there something special about the consequences of supervised release that that can be put in the letter? Your Honor, I don't know the answer in terms of whether everything from a Rule 11 colloquy could be. However, the judge, Judge Macedi, went through and did. No, no, I know, but I'm just trying to think in terms of if we were to write an opinion saying this is okay, is it that you can do the whole thing by letter, or is there something special about this that makes this something you can do by letter? I think what's special about this is that this was a specific articulation of what the terms of supervised release and of the sentence itself were, and it was a way for the judge, one of the ideas of the letter is to show that this is an open plea. There was not an agreement between the government and the defendant. This is an opportunity for the defendant to say, I understand what I'm pleading guilty to, and I also understand the consequences of my pleading guilty to it. So he was making that very clear to the court, and then the court asks him, do you understand this? Did you go over this with your attorney and with a Spanish-language interpreter? And he said yes, he did. So for these reasons, the court, again, was correct and followed all of the needs of Federal Rule of Procedure 11. Unless the court has any further questions. Thank you, Mr. Patterson. Thank you, Mr. Patterson. Thank you. I would just like to respond briefly to the few points that the government made. With respect to the court's statements in support of its imposition of the supervised release, because I think that's the crux of the matter here, there's a few reasons to question whether that meets the standard required under 5G1.1c. Number one, we have the court's earlier statements made repeatedly that this was a case where he heard the same arguments in every single case. Mr. Apicano's attorney was trying to respond to the court's concerns about risk to the public and deterrence, and the court said, oh, I hear the same thing in every single one of these cases. The court's not doing anything to distinguish this case in particular. And when the court gave his explanation for why he wanted supervised release, he said, well, I want probation to revoke him because that will get him to jail faster. That's not factually accurate. And in other cases we see, well, you're going to get a violation on top of a new conviction, which in practice doesn't actually usually happen. Usually when someone comes back in, they're- You don't think it's more efficient to revoke supervised release than to begin again with an indictment for the grand jury? I don't, Your Honor. And what we usually see in practice is often- The perception, I think, by the judges and the prosecutors is that revoking supervised release is a quicker procedure than going through the whole judicial process of a trial. There is a lower standard of proof, certainly, but the problem is usually- There are also procedural steps. Yes. Usually they're going to, number one, face- It might enhance the protection of the public. That's one of the things mentioned in the advisory note. What's it say? Deterrence and protection. He wouldn't be getting out on bond or anything like that. No, but he wouldn't anyway. As a practical matter, when the- As a practical matter, he might not, but it might be more likely to make bond if he's reindicted or something. Because when someone is found back in the country when there's already been an order of deportation, that order of deportation is automatically renewed, so they would not be eligible for release, and I've never seen that happen. As a practical matter, when these individuals do come back to the country illegally, they're detained in that jurisdiction where they're found, and that is where they are prosecuted for illegal reentry. It's expensive. It's cumbersome for the supervising, the ostensibly supervising district, to transport that person from, say, Texas to Maryland, when they know they're going to get a higher sentence usually on the new offensive conviction, to then bring them to the jurisdiction where they may or may not even get consecutive time. Sometimes they say, well, this person already got four years. I'll just add some concurrent time. That's a lot of expense and administrative burden. As a practical matter. So, again, and again, I understand what the court said, but I'm not sure that that is either factually accurate or that it addresses the specific concerns in 5G 1.1. A single motion to vacate and having a hearing on that is much more efficient than going through the whole process with the indictment motions, pretrial motions, trial, and appeal and all that business. I'm not sure what your point is, but it seems to me that all the judges perceive the notion that a violating supervised release will get the man in the justice system much quicker. And I understand that, Your Honor. I think as a practical matter, though, what we see in practice is it's not, probation doesn't want to spend the money to transport the person halfway across the country for a violation. He violated another law. Yes. But they still have to be transported to prosecute the violation. And, again, I just want to emphasize that we are not looking for magic words here. The guideline does, auditory or no, does require certain findings. What's the magic substance you're looking for? And I fail to understand what you want the judge to say more. And that's my biggest problem with your whole argument. You make some technical arguments here and there. This wasn't done or this wasn't done. I'd like to know what the judge, who clearly was troubled by this situation and expressed it many times in many different ways, the combination of multiple reentries, unreliability, and violence, this would trouble this judge. And the question is, what is your answer to that judge's findings with respect to this particular defendant on those points? Your Honor, the court did not address the Application Note 5 and did not address the fact... Just tell me what you think the judge would have to say more. I see my time is up. May I respond? Please. Thank you. What the court should have done, Your Honor, is to say, this is not a case in which the threat of future prosecution is sufficient to address my concerns for deterrence and the danger to the public. And because of that, there is a need for an additional measure of deterrence and protection that will be met with the imposition of a term of supervised release. Thank you. We'll adjourn court.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris